CULPEPPER, Judge.
This is a suit for damages arising out of an automobile accident. The plaintiff, Len-nis J. Rochon, driving a Volkswagen sedan, was stopped for a red traffic light at an intersection when he was struck from the rear by an automobile driven by the defendant, Noah J. Moore. Mr. Moore was uninsured. Hence plaintiff also names his own insurer as a defendant under the uninsured motorist provisions. From an adverse judgment plaintiff appeals.
The issue .on appeal is which of the contradictory versions of the accident is supported by the evidence.
The collision occurred in the city.of Lafayette at the intersection of West University Avenue, a four-lane highway running north and south, with West Vermilion Street, a two-lane thoroughfare running east and west. The speed limit on the avenue is 35 miles per hour. There is a signal light which controls traffic at the intersection.
The accident occurred at about 10:30 a. m. on a rainy day. The concrete pavement was wet.
The plaintiff, a young man 27 years of age, with his two 9 year old nieces as passengers, was proceeding in a northerly direction on West University Avenue. His version of the accident is that he was traveling about 30 miles per hour in the right-hand, or easternmost, lane of traffic. As he approached the intersection, he saw the light changing from caution to red. He stopped at the intersection, in the right-hand lane and had been in that position for several seconds when he was struck violently from the rear by the automobile driven by the defendant Moore. Plaintiff’s vehicle was knocked forward a distance of about 20 feet and came to rest approximately in the center of the intersection.
The plaintiff testified further that immediately after the accident he first ascertained that neither of his neices was seriously hurt and then he went to Mr. Moore’s vehicle to inquire as to his condition. Plaintiff says that defendant then told him that although defendant didn’t have any *920 insurance, plaintiff could take his vehicle to Mr. “A. B. Sonnier” who would make any necessary repairs. However, when giving a statement to the police officer a short time later, Moore took a contrary attitude. He told the officer that plaintiff had passed him going “85 miles per hour” ; then cut back into the right lane into a space of about “15 feet” between Moore and a “lady” in front; and then slammed on his brakes and stopped so suddenly that Moore was unable to avoid striking the rear of plaintiff’s Volkswagen.
Plaintiff firmly denied that he had passed Moore’s vehicle at any time. He also testified that he smelled intoxicating liquor on defendant’s breath and called the officer’s attention to this fact.
Sheree Benoit, one of plaintiff’s 9 year old nieces, testified she was sitting on the right side of the front seat and that they stopped at the red light and then they were struck from behind. She said they did not pass defendant’s vehicle.
Sheryl Benoit, plaintiff’s other 9 year old niece, testified she was sitting on the back seat and that they had just arrived at the red light when they were “bumped”. She also denied they passed Moore.
Officer Johnny Huval, who investigated the accident, testified that it was a rainy day, the concrete pavement was wet and traffic was moving slowly. The vehicles were both damaged to the extent that a wrecker was called to tow them away. At the scene, plaintiff gave his version of the accident as set forth above. The defendant Moore stated that he had been traveling in a northerly direction in the right-hand lane of West University Avenue, at a speed of 30 miles per hour and that as he approached the intersection the plaintiff passed him at a speed of “about 85 miles per hour” and cut into a space of “about 15 feet” between defendant and the vehicle of another lady preceding him. Moore related to him further, that the lady was able to cross the intersection on the caution light but plaintiff slammed on his brakes and stopped so suddenly that defendant was unable to avoid colliding with the rear of plaintiff’s vehicle.
Officer Huval testified further that he smelled alcohol on defendant’s breath and that defendant admitted having consumed “a couple of small drinks.” Defendant was placed under arrest and taken to jail, but there is no record of any conviction.
The defendant, who is 56 years of age and retired from his work as a carpenter, because of crippling injuries, and who is also hard of hearing, gave substantially the same version of the accident at the trial as he gave to the police officer, set out above. Moore denied that he had consumed any alcoholic beverages shortly before the accident and actually denied that he ever drank intoxicating liquor. He further denied having told the officer that he had consumed “about two small drinks.” Mr. Moore also says he doesn’t know why the officer arrested him and took him to jail.
The major conflict in the testimony is that the defendant contends plaintiff passed him at a high rate of speed and cut in front and stopped for the red light. Both plaintiff and his 2 nieces firmly denied that they passed defendant’s vehicle. Plaintiff and his 2 young nieces testified that they intended to proceed on through the intersection in a northerly direction to return to their home. He did not intend to turn right at the intersection. It is difficult to understand why, since there was no mention of other traffic in the area, the plaintiff would cut in front of defendant in the right-hand lane, instead of remaining in the left-hand lane at the stop light.
From a reading of the testimony in the record the version of the accident given by plaintiff and both of his young nieces is lucid, logical and credible. On the other hand, defendant’s testimony is exaggerated, vague and very difficult to believe. The statement to the officer at the scene of the accident, that plaintiff was driving 85 miles per hour, is obviously an *921 exaggeration. Plaintiff could not possibly have been driving anything near 85 miles per hour and been able to stop on the wet pavement for this traffic signal. Furthermore, defendant’s testimony that plaintiff cut into a space of only 15 feet between defendant and the lady in front, is very difficult to believe. There is simply no explanation in the record as to why plaintiff would try to cut into a 15-foot space between defendant and the lady in front in the right-hand lane, when there was nothing in the left-hand lane to prevent him from simply staying in that lane and stopping for the red light there.
Furthermore, even under defendant’s version of the accident, he could not have stopped for the traffic light. He admits he hit plaintiff’s car and knocked it forward. It is apparent that defendant either did not intend to stop, or could not have stopped, for the red light, regardless of whether plaintiff’s car cut in front of him. This is inconsistent with defendant’s testimony.
Of course, the contradictions between the testimony of the police officer and that of defendant as to whether defendant’s breath smelled of alcohol weakens defendant’s credibility. Also there is a conflict between the officer and defendant as to whether defendant was arrested and charged with any offense.
We have carefully studied this record as a whole, being most reluctant to reverse the decision of the district judge on a finding of fact, but we are simply unable to affirm this decision. In our view, a clear preponderance of the evidence supports plaintiff’s version of the collision. Under this finding of fact, the accident was caused solely by the negligence of defendant.
We will now turn to the question of quantum. Immediately after the accident, plaintiff went to the hospital with his 2 young nieces. Plaintiff remained in the emergency room for only 45 minutes and then was discharged. The accident occurred on a Saturday, August 26, 1967, and plaintiff testified that by Monday his neck was very stiff. He was seen by Dr. James Gillis, an orthopedic surgeon, on August 28, 1967. The diagnosis was a strain of the sternomastoid muscles. He also had a contusing injury of the chest. However, the only treatment administered was medication for muscle relaxation and pain. He didn’t lose any time from his work as a waiter. Dr. Gillis found him symptom free by about October 1, 1967, which was approximately 5 weeks after the accident.
Under these circumstances, an award of $500 in general damages is appropriate. Plaintiff is also entitled to recover $55.29, representing medical expense, and the sum of $100 paid as the deductible portion of his collision insurance policy.
For the reasons assigned, the judgment appealed is reversed and set aside, It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Lennis J. Rochon, and against the defendants, Noah J. Moore and American Indemnity Company, jointly and in solido, for the sum of $655.29, together with legal interest thereon from date of judicial demand until paid, and all costs in the trial and appellate courts.
Reversed and rendered.
FRUGÉ, J., dissents for reason that Trial Judge was correct.